## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 52327

| | | |
|---|---|---|
| THOMAS CREECH, | ) | |
| | ) | **Boise, November 2024 Term** |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | **Opinion Filed: November 5, 2024** |
| | ) | |
| STATE OF IDAHO, | ) | |
| | ) | **Melanie Gagnepain, Clerk** |
| Respondent. | ) | |

Appeal from the District Court of the Fourt Judicial District of the State of Idaho, Ada County. Jason D. Scott District Judge.

The decision of the district court is <u>affirmed.</u>

Erik R. Lehtinen, State Appellate Public Defender, Boise, for Appellant Thomas Eugene Creech. Garth S. McCarty submitted argument on the briefs.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent State of Idaho. L. LaMont Anderson submitted argument on the briefs.

_____

MEYER, Justice.

Thomas Eugene Creech appeals from the district court's September 5, 2024, order dismissing his petition for post-conviction relief and the district court's October 16, 2024 order denying his motion for reconsideration. Creech was sentenced to death in 1995. Earlier this year, the State of Idaho attempted to execute Creech by lethal injection, but the process failed due to the inability to establish reliable intravenous access. The execution team spent nearly an hour attempting to establish venous access in various parts of Creech's body, including his arms, hands, and ankles, but each attempt resulted in vein collapse. After numerous failed attempts, the procedure was halted.

Following the failed execution, Creech filed a petition for post-conviction relief on March 18, 2024, arguing that any further attempt to carry out his death sentence would violate his constitutional rights. Specifically, Creech argued that a second attempt to execute him by any means would violate the United States Constitution's Fifth Amendment's Double Jeopardy Clause and the Eighth Amendment's prohibition against cruel and unusual punishment. Creech timely

1

appealed both district court orders. We affirm the district court's summary dismissal of Creech's petition for post-conviction relief because he did not raise a genuine issue of material fact and summary dismissal of his Fifth and Eighth Amendment claims was proper as a matter of law. A second execution attempt in this case does not amount to cruel and unusual punishment nor does it amount to imposing multiple punishments for the same offense.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Creech's prior cases are complex and began in the 1970s. The history is partly recounted in *Creech v. Richardson*, 59 F.4th 372, 376–82 (9th Cir. 2022). We will only summarize the most recent appeals and post-conviction claims relevant to this appeal.

Creech was scheduled for execution on February 28, 2024. His appeal relates to his petition for post-conviction relief following the failed execution in February. The Warden called off the first execution attempt after the execution team was unable to locate a suitable vein to administer the pentobarbital. Shortly after the failed execution, Creech filed a petition for post-conviction relief, arguing that any further attempts to execute him would constitute cruel and unusual punishment under the Eighth Amendment of the United States Constitution and Article I, section 6 of the Idaho Constitution. Alternatively, Creech contended that any further attempts to execute him would violate his constitutional protections against double jeopardy under the Fifth Amendment and Article I, section 13 of the Idaho Constitution because it would constitute "multiple punishments for the same offense."

The State moved for summary dismissal of Creech's petition for post-conviction relief, which the district court granted. The district court construed Creech's Eight Amendment argument as a challenge to the method of execution. It determined Creech could not litigate his claim in a post-conviction action under Idaho Code sections 19-2719 and 19-4901 to -4911. The district court surmised that Creech could pursue his Eighth Amendment challenge to the method of execution "in an action of another kind." It suggested Creech could have a cause of action under 42 United States Code section 1983 and Idaho's Uniform Declaratory Judgment Act, Idaho Code sections 10-1201 to -1217.

Alternatively, the district court also addressed Creech's petition on the merits. First, it declined to address Creech's state constitutional arguments because Creech failed to argue that the Idaho Constitution's protections exceeded those of the federal constitution. Second, the district court determined that a second execution attempt did not violate the Fifth Amendment because

2

Creech would not be subject to "more punishment than the legislature authorized for his crime." Third, it determined that a second execution attempt would not violate the Eighth Amendment because the "Eighth Amendment does not . . . categorically prohibit, as cruel and unusual punishment, a second attempt to carry out a death sentence." The district court noted that "the State didn't intentionally or maliciously inflict unnecessary pain during the failed execution attempt," facts which, if they existed, potentially could have established a meritorious Eighth Amendment claim. It also held that Creech had not established that a second execution attempt would inflict unnecessary pain because it indicated that the alternative to lethal injection is execution by firing squad.

Creech moved for reconsideration, which was denied. Following the denial of the motion for reconsideration, the State obtained a new death warrant that reset Creech's execution for November 13, 2024.

Creech now appeals the district court's summary dismissal of his petition for post-conviction relief.

## II. STANDARDS OF REVIEW

A petition for post-conviction relief is a civil proceeding—rather than criminal—governed by the Idaho Rules of Civil Procedure. *Rodriguez v. State*, 171 Idaho 634, 642, 524 P.3d 913, 921 (2023) (citation omitted). Summary dismissal of an application for post-conviction relief is the procedural equivalent of summary judgment under Rule 56 of the Idaho Rules of Civil Procedure. *Takhsilov v. State*, 161 Idaho 669, 672, 389 P.3d 955, 958 (2016) (quoting *State v. Yakovac*, 145 Idaho 437, 444, 180 P.3d 476, 483 (2008)). "On review of a dismissal of a post-conviction relief application without an evidentiary hearing, this Court determines whether a genuine issue of fact exists based on the pleadings, depositions and admissions together with any affidavits on file" and liberally construes the facts and reasonable inferences in favor of the petitioner. *Rhoades v. State*, 148 Idaho 247, 250, 220 P.3d 1066, 1069 (2009) (citations omitted).

Constitutional issues are purely questions of law over which this Court exercises free review. *Thumm v. State*, 165 Idaho 405, 412, 447 P.3d 853, 860 (2019) (citing *State v. Abdullah*, 158 Idaho 386, 417, 348 P.3d 1, 32 (2015)).

## III. ISSUES ON APPEAL

1. Is a post-conviction relief action the proper vehicle for Creech to assert his Eighth Amendment claim?

2. Did Creech make a sufficient presentation to justify an evidentiary hearing?

3

3. Has Creech raised a meritorious claim?

## IV. ANALYSIS

Creech requests that this Court vacate the district court's order dismissing his petition for post-conviction relief and remand the case for consideration of his claims on the merits. First, we will address Creech's argument that his claims are properly raised under Idaho Code section 19-2719 and the Uniform Post-Conviction Procedure Act, Idaho Code sections 19-4901 to -4911 (UPCPA). Second, we will address whether the district court erred when it summarily dismissed Creech's petition instead of allowing an evidentiary hearing on Creech's claims. Third, we will address the merits of Creech's constitutional arguments.

### A. Creech's claims were properly raised under Idaho Code section 19-2719.

Post-conviction proceedings in capital cases are primarily governed by Idaho Code section 19-2719. *Sivak v. State*, 134 Idaho 641, 646, 8 P.3d 636, 641 (2000) (citation omitted). The UPCPA applies where Idaho Code section 19-2719 is silent. *Id.* at 646, 8 P.3d at 641 (citation omitted). Post-conviction relief is available to defendants who claim, "among other things, that their convictions or sentences violate the federal or state constitutions, that material facts not previously presented require vacating them, or that they are otherwise subject to collateral attack under common law or statute." *Id.* (citations omitted). Idaho Code section 19-2719(3) requires the defendant to file "any legal or factual challenge to the sentence or conviction" under this section." I.C. § 19-2719. It also provides that "[a]ny remedy available by post-conviction procedure, habeas corpus or any other provision of state law must be pursued according to the procedures set forth in this section." *Id.* Generally, if a successive post-conviction petition "alleges matters that are cumulative or impeaching or would not, even if the allegations were true, cast doubt on the reliability of the conviction or sentence," then it will be deemed "facially insufficient." I.C. § 19-2719(5)(b).

The district court determined that a post-conviction petition is not the proper vehicle for Creech's claims because it determined that Creech's constitutional objections to a second execution attempt do not cast doubt on the reliability of his underlying death sentence. The district court characterized Creech's challenge to a second execution attempt as "a mere challenge to a proposed method of execution" that did not amount to "a potentially viable challenge to his conviction or death sentence." Creech contends on appeal that the district court mischaracterized his challenge to a second execution attempt as limited to execution by lethal injection instead of a

4

constitutional challenge to a second execution attempt by any means. Creech posits that his claim is a challenge to the validity or reliability of the sentence because, if he prevails, the State will be foreclosed from carrying out his death sentence. As a result, he argues a post-conviction petition for relief is the proper vehicle for raising his constitutional challenges to a second execution attempt. Creech also maintains that if this Court determines a post-conviction petition is not the proper vehicle to raise his claims, then he will be left with "no path to challenge the cruel and unusual nature of a second execution attempt" in state court.

On appeal, the State argues the district court did not err in its determination that Creech's claims are not properly raised in a post-conviction petition because his claims do not cast doubt on the reliability of his underlying conviction or sentence—he only challenges the method of execution. The State maintains that challenges to the validity of an underlying conviction and sentence in post-conviction proceedings "look back to prior proceedings," whereas Creech's claims are prospective, focusing on a future proceeding—the second execution attempt. Thus, the State maintains that "whatever happens as a result of his future execution cannot change the lawfulness of his death sentence that was imposed in 1995."

The district court's interpretation of the UPCPA and the Idaho Code section 19-2719 is too narrow. Even if post-conviction actions, including successive petitions for post-conviction relief, generally "look back" to prior proceedings to challenge the reliability or validity of a sentence, *see, e.g.*, *Row v. State*, 145 Idaho 168, 177 P.3d 382 (2008); *Sivak*, 134 Idaho at 641, 8 P.3d at 636 (successive petitions for post-conviction relief based on alleged new evidence), the gravamen of a post-conviction claim is the challenge to the reliability or validity of a conviction or sentence. The district court erred when it characterized Creech's claims as a mere challenge to the method of execution. It is our view that Creech's claims necessarily implicate the validity of the death sentence previously imposed, because Creech's Eighth Amendment challenge to a second execution attempt by any means, if successful, would prevent the State from carrying out his death sentence. Therefore, even though his claims "look forward" to a future proceeding instead of "looking back" to prior proceedings, Creech is challenging the *current* validity of his sentence in light of events that occurred in the *recent past*—his first unsuccessful execution. As a result, we hold that Creech's claims are properly raised through a petition for post-conviction relief.

We disagree with the district court's suggestion that Creech pursue his Eighth Amendment and Fifth Amendment claims through Idaho's Uniform Declaratory Judgment Act, (UDJA), Idaho

5

Code section 10-1201 to -1217. While the UDJA vests courts with the ability to "declare rights, status, and other legal relations, whether or not further relief is or could be claimed," it does not clearly apply to judgments of conviction or sentences in criminal cases. *See* I.C. § 10-1202. Idaho Code section 10-1202 references determining rights or statuses for persons interested in or affected by deeds, wills, written contracts and statutes, municipal ordinances, and franchises. Judgments of conviction and sentences in criminal cases are conspicuously absent from this list. Further, the UPCPA generally "takes the place of all other common law, statutory, or other remedies heretofore available for challenging the validity of the conviction or sentence. It shall be used exclusively in place of them." I.C. § 19-4901(b).

The special concurrence is premised on the understanding that Creech challenges *how* he is to be executed in the future given the failed execution attempt that occurred in February 2024. In our view, both the district court and our esteemed colleagues misperceive Creech's argument, which is that it would be cruel and unusual punishment to execute him using *any method*. Distilled to its essence, Creech argues that the death sentence imposed decades ago is *no longer valid* and *no longer reliable* given the circumstances of the failed execution attempt. While Creech's death sentence is facially valid and has indeed been affirmed by this Court and the United States Supreme Court, his Eighth Amendment claim casts doubt on the continued validity and reliability of the death sentence.

The special concurrence criticizes our decision as creating an avenue for Creech and similarly situated future individuals when neither the UPCPA nor Idaho Code section 19-2719 provides relief for his claim. The special concurrence, however, glosses over the very language in the UPCPA which expressly sets forth who can institute a claim under the Act:

> (a) Any person who has been convicted of, or sentenced for, a crime and who claims:
> (1) That the conviction or the sentence was in violation of the *constitution of the United States or the constitution or laws of this state*;
> . . .
> (4) That there *exists evidence of material facts*, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice;
> . . .
> (7) That the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error *heretofore available* under any common law, statutory or other writ, motion, petition, proceeding, or remedy: *may institute, without paying a filing fee, a proceeding under this act to secure relief*.

I.C. § 19-4901(a)(1), (4), and (7) (emphasis added).

6

Importantly, the UPCPA also expressly provides that it takes the place of all other common law, statutory, or other remedies that were available prior to the passage of the act:

> Except as otherwise provided in the act, it comprehends and takes the place of all other common law, statutory, or other remedies *heretofore available for challenging the validity of the conviction or sentence*. It shall be used exclusively in place of them.

I.C. § 19-4901(b) (emphasis added).

The emphasized words in the opening section of Idaho's Uniform Post-Conviction Procedure Act demonstrate that it contemplates constitutional challenges to a sentence or conviction; that presently existing evidence of material facts might require vacation of the conviction or sentence; and significantly, that all procedures previously available to individuals ("heretofore available") to challenge the validity of the conviction or sentence are comprehended in the UPCPA, which "shall be used exclusively in place of" them. Thus, the UPCPA is not strictly limited to looking back to the validity of the sentence or conviction at the time they were entered. Indeed, under section 19-4901(a)(4), the present existence of material facts, not previously presented and heard, that require vacating the sentence in the interest of justice, reveals the fallacy of such a limited view.

An example of new facts that call into question the continued validity and reliability of a death sentence involves individuals with mental illness, dementia, or similar conditions that render them unable to "reach a rational understanding of the reason for [his] execution." *Madison v. Alabama*, 586 U.S. 265, 273 (2019) (brackets in original) (quoting *Panetti v. Quarterman*, 551 U.S. 930, 958 (2007)). In *Madison*, the Supreme Court reiterated that "an execution lacks retributive purpose when a mentally ill prisoner cannot understand the societal judgment underlying his sentence [and] an execution offends morality in the same circumstance." *Id*. at 279 (citations omitted). Key to this case is that Madison, sentenced to death for the 1985 murder of a police officer, decades later had a series of strokes and developed vascular dementia with disorientation, confusion, cognitive impairment, and memory loss. *Id*. at 269. The Supreme Court of the United States vacated the Alabama judgment and remanded the matter for a redetermination of Madison's competency based on the principles articulated in its decision. *Id*. at 282–83. A similar factual scenario would fall within the scope of the UPCPA because it would necessarily involve "*evidence of material facts*, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice[.]" I.C. § 19-4901(a)(4).

7

And the relief that could be granted under the UPCPA, which the special concurrence laments is not something this Court can create on its own, is revealed in subsection (a)(4) itself: "vacation of the. . . sentence in the interest of justice[.]" If the death sentence were vacated, that would leave Creech with a fixed life sentence under Idaho Code section 18-4004.

The special concurrence laments that the Court's opinion is "long on empathy for post-conviction petitioners and short on the legal authority." We respectfully disagree, based on our view that the UPCPA does not limit post-conviction relief as strictly as the special concurrence suggests. We cannot accept the conclusion that we have to agree to a result that "some might view as harsh" when the matter before us concerns the harshest possible consequences, particularly when there is an avenue for relief without rewriting the very statutory provisions upon which Creech relies.

Were this Court to adopt the district court's narrow interpretation of the UPCPA and Idaho Code section 19-2719, it would foreclose Creech and similarly situated petitioners from seeking relief in state court. Even if Creech may be able to proceed in federal court, either through a federal writ of habeas corpus under 28 United States Code section 2254 or a claim under 42 United States Code section 1983, it is our view that he and future defendants, are authorized by the plain language of the UPCPA to seek relief in state court through a petition for post-conviction relief.

## B. The district court did not err by summarily dismissing Creech's claims without affording him an evidentiary hearing.

Moving to the merits, Creech argues that the district court erred in dismissing the petition without granting an evidentiary hearing, as the issues he has raised warranted further examination.

"Idaho Code section 19-4906 authorizes summary dismissal of a post-conviction petition" either pursuant to a party's motion or upon the trial court's own initiative. *Rodriguez*, 171 Idaho at 641, 524 P.3d at 920 (citation omitted); I.C. § 19-4906(b)-(c). Summary dismissal is appropriate "when it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.*

Creech emphasizes that his petition presented sufficient evidence to merit a hearing and criticizes the district court's decision to dismiss without considering all material facts. The State counters, arguing that Creech's petition for post-conviction relief did not meet the criteria for an evidentiary hearing because the claims lacked merit and were not legally cognizable, justifying summary dismissal.

We agree that Creech's petition did not meet the criteria for an evidentiary hearing. An application for post-conviction relief differs from a complaint in an ordinary civil action. *Id.* (citation omitted). The application must contain much more than a short and plain statement of the claim that would suffice for a complaint under Idaho Rule of Civil Procedure 8(a)(1). *Id.* Instead, to justify a post-conviction evidentiary hearing, the application must make a factual showing based on admissible evidence. *State v. Dunlap*, 155 Idaho 345, 391, 313 P.3d 1, 48 (2013) (citation omitted). It must also be supported by a statement that "specifically set[s] forth the grounds upon which the application is based." *Rhoades*, 148 Idaho at 249–50, 220 P.3d at 1068–69 (first citing *Payne*, 146 Idaho 548, 561, 199 P.3d 123, 136 (2008), and then citing I.C. § 19-4903).

Creech's petition for post-conviction relief asserts two claims for relief. His first claim alleges that a second execution attempt by any means after a failed execution, violates the Eighth Amendment's prohibition against cruel and unusual punishment. His second claim alleges that a second execution attempt after a failed execution violates the Double Jeopardy Clause of the Fifth Amendment. Creech's second claim fails as a matter of law, as we discuss below. Therefore, we will only address whether the district court erred in dismissing Creech's first claim in his petition without an evidentiary hearing.

Creech's petition narrates the events that occurred on February 28, 2024. The failed execution involved eight attempts to insert needles into his body. Each attempt "hurt pretty bad" and heightened his anticipation of imminent death. Creech also described the psychological anguish he experienced, noting that he had to look through the glass at his wife, believing each needle stick could be his last moment. He maintains that his psychological strain continued after the failed execution, including nightmares and ongoing trauma he faces in anticipation of a second execution attempt. Due to the procedural posture of this case, we will accept as true Creech's allegations that he experienced the pain and ongoing psychological distress that he described. Still, Creech's allegations in his petition do not entitle him to relief because the pleadings and affidavits submitted do not raise a genuine issue of material fact. A genuine issue of material fact exists when "the appellant has alleged facts in his petition that if true, would entitle him to relief." *Wheeler v. State*, 162 Idaho 357, 359, 396 P.3d 1239, 1241 (2017) (citation omitted). While courts must liberally construe the facts and draw reasonable inferences in favor of the applicant, the applicant's conclusions need not be accepted. *See Hooley v. State*, 172 Idaho 906, 912–13, 537 P.3d 1267, 1273–74 (2022).

9

As discussed in more detail below, to prevail on his Eighth Amendment claim, Creech's application for post-conviction relief must have alleged that the State intentionally or maliciously inflicted unnecessary pain during the first failed execution, or the State is pursuing the second to intentionally or maliciously inflict unnecessary pain. *See Louisiana ex. rel. Francis v. Resweber*, 329 U.S. 464, 463–64 (1947); *see also Broom v. Shoop*, 963 F.3d 500, 512–13 (2020) (discussing *Resweber* before rejecting the defendant's Eighth Amendment claim after concluding that no unnecessary pain was intentionally or maliciously inflicted during the failed execution). In this regard, Creech's petition is devoid of evidence that the Department of Correction intended to cause him unnecessary pain or that the execution team maliciously inflicted pain—physical or psychological—during the failed execution. To be sure, Creech does not allege this fact in his application for post-conviction relief. On the contrary, Creech's petition shows that the Warden halted the execution after it became clear that the medical team was unable to proceed. Josh Tewalt, the Director of the Idaho Department of Correction, explained during a press conference held that day that the execution team "did their level best, in a professional way that was respectful of the process. And when it appeared those efforts were going to be unsuccessful, they . . . opted to stop additional efforts so that [the Department] could evaluate [the] next steps."

Based on the pleadings and affidavits submitted, the trial court did not err in dismissing Creech's petition for post-conviction relief. To survive summary dismissal, Creech was required to establish a genuine issue of material fact regarding his Eighth Amendment claim. Absent such a showing, a trial court does not err in dismissing a petition post-conviction relief. We address the merits of Creech's constitutional claims next.

## C. Creech's constitutional claims lack merit.

### 1. A second execution attempt does not violate the Eighth Amendment's prohibition against cruel and unusual punishment.

This case presents an issue of first impression in Idaho; namely, whether a second execution attempt after a failed execution violates the Eighth Amendment's prohibition against cruel and unusual punishment. We hold that when applied to the facts of this case, it does not.

"We begin with the principle . . . that capital punishment is constitutional." *Baze v. Rees*, 553 U.S. 35, 47 (2008). The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII. The United States Supreme Court addressed the applicability of an Eighth Amendment challenge to a second execution attempt in *Resweber*, 329 U.S. at 464–65. There, the defendant's first execution was

10

unsuccessful because the electric chair he was sentenced to die in malfunctioned. He alleged that the psychological strain from preparing for two executions "subjects him to a lingering or cruel and unusual punishment." *Id.* at 464. In a four-justice plurality decision, the Court explained that although the defendant previously experienced a failed execution, that "does not make his subsequent execution any more cruel in the constitutional sense than any other execution." *Id.* The plurality emphasized that "[t]he fact that an unforeseeable accident prevented the prompt consummation of the sentence cannot, it seems to us, add an element of cruelty to a subsequent execution." *Id.* It noted that the purpose of a second execution attempt was not "to inflict unnecessary pain." *Id.* The plurality held that "[t]he cruelty against which the Constitution protects a convicted man is cruelty inherent in the method of punishment, not the necessary suffering involved in any method employed to extinguish life humanely." *Id.*

Here, Creech similarly argues that a second execution attempt by any means would violate the Eighth Amendment's prohibition against cruel and unusual punishment based in part on the psychological trauma he experienced both during and after the failed execution. Creech asserts that he continues to experience "pain and non-physical suffering . . . in anticipation of a second attempt." While we accept his assertions of mental pain and suffering as true, they do not amount to cruel and unusual punishment. As the Supreme Court has noted, "[s]ome risk of pain is inherent in any method of execution—no matter how humane—if only from the prospect of error in following the required procedure." *Baze*, 553 U.S. at 47. "[T]he Constitution does not demand the avoidance of all risk of pain in carrying out executions." *Id.*

Similar to the failed execution in *Resweber*, the failed execution in this case could be the result of human error or it could be the result of Creech's veins collapsing on every attempt. The Director of the Department of Correction stated that "this isn't a do it at all costs process" and explained that the execution team "did their level best, in a professional way that was respectful of the process. And when it appeared those efforts were going to be unsuccessful, they did the right thing and opted to stop additional efforts so that we could evaluate [the] next steps." The record shows the Warden promptly halted the execution after the execution team spoke with him once it became clear they were unable to proceed. Like the situation experienced by the defendant in *Resweber*, the psychological strain Creech experienced preparing for the failed execution, and the subsequent nightmares and trauma he now faces in anticipation of a second execution attempt, do

11

not by themselves amount to cruel and unusual punishment in the constitutional sense. Such distress is necessarily and unavoidably part of any method of execution.

Creech contends that *Resweber* is a harsh decision and a relic of a bygone era almost eighty years distant; therefore, this Court's reliance on it would be misplaced. For example, he argues that when the Supreme Court decided *Resweber*, Eighth Amendment jurisprudence had yet to incorporate "evolving standards of decency" into its analysis. Nevertheless, *Resweber*, for all of Creech's misgivings, remains good law. The district court's rejection of Creech's Eighth Amendment arguments relied on *Resweber* and looked to *Broom*, 963 F.3d at 514–15 (discussing *Resweber*). The district court determined that Creech did not argue the Department of Correction intentionally or maliciously inflicted unnecessary pain during the failed execution, in contrast to the defendant in *Broom*, and that the record also did not support such a finding. We agree that Creech has not established that the Department of Correction intentionally or maliciously inflicted unnecessary pain during the failed execution, nor has he shown that a second execution attempt would cause him unnecessary pain. Therefore, we hold that Creech has not established that a second execution attempt by any means would violate his Eighth Amendment rights because he has not shown that a second attempt would cause him to unnecessary pain.

2. *A second execution attempt does not violate the Double Jeopardy Clause of the Fifth Amendment.*

Creech's next argument raises another issue of first impression for this Court. This Court has never addressed whether a second execution attempt after a failed execution violates the Double Jeopardy Clause of the Fifth Amendment. Creech contends that the failed execution attempt constitutes "punishment;" thus, a second attempt would be an impermissible multiple punishment for the same offense. Creech explains that the physical and psychological suffering he experienced during the first failed execution attempt qualifies as part of the punishment, which means a second execution for the same offense would be a violation of his constitutional rights. The State counters that the protections afforded by the Double Jeopardy Clause do not apply in this context because the Clause aims to prevent multiple punishments exceeding what the legislature intended.

Relying on *Jones v. Thomas*, 491 U.S. 376, 381 (1989), and *Broom*, 963 F.3d at 514–15, the district court concluded that Creech's double jeopardy claim was "legally untenable and must be dismissed." The court reasoned that double jeopardy does not prevent the State from attempting

12

to carry out Creech's death sentence a second time when he has not yet received the punishment authorized for his crime.

The Fifth Amendment of the United States Constitution provides that "[n]o person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. CONST. amend. V; *Benton v. Maryland*, 395 U.S. 784, 794 (1969) (incorporating right through the Fourteenth Amendment). The prohibition against double jeopardy provides protection in three circumstances: "(1) against a second prosecution for the same offense after acquittal, (2) against a second prosecution for the same offense after conviction, and (3) against multiple punishments for the same offense." *State v. Passons*, 163 Idaho 643, 646, 417 P.3d 240, 243 (2018) (citations omitted). The only protection relevant here, however, is the protection against multiple punishments for the same offense. The protection against multiple punishments for the same offense serves a limited purpose "to ensure that sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government[.]" *Jones*, 491 U.S. at 381 (citing *Ohio v. Johnson*, 467 U.S. 493, 499 (1984)).

The United States Supreme Court has not addressed whether the Double Jeopardy Clause acts as a bar to a second execution attempt. Although the issue was raised in *Resweber*, the Court declined to apply the Fifth Amendment Double Jeopardy Clause because, at the time, it did not apply to the states. *See Resweber*, 329 U.S. at 462–63. To be sure, this factual scenario is rare, and *Resweber* is the only Supreme Court precedent to address the constitutionality of a second execution attempt. Nevertheless, given that "the Double Jeopardy Clause prohibits punishment in excess of that authorized by the legislature," we need only consider whether the punishments imposed are unconstitutionally multiple by determining what punishments the legislative branch has authorized. *See id.* at 383.

Here, Creech pled guilty to the crime of first-degree murder under Idaho Code section 18-4003(e). Idaho authorizes that "every person guilty of murder of the first degree shall be punished by death or by imprisonment for life." *See* I.C. § 18-4004. As punishment for his crime, Creech was sentenced to death by the district judge, pursuant to Idaho Code section 19-2515. Attempting a second execution following a failed first attempt does not impose a second punishment beyond that authorized by the legislature because the State authorizes punishment by death for first-degree murder, and Creech's death sentence was not carried out. While we acknowledge the pain and ongoing psychological distress that Creech has faced, his claim does not give rise to double

jeopardy concerns. Therefore, the district court did not err in dismissing Creech's double jeopardy claim.

      *3. Creech failed to preserve his state constitutional claims for appeal.*

It is well-established that "this Court is free to interpret [the Idaho] constitution as more protective than the United States Constitution." *State v. Delling*, 152 Idaho 122, 128, 267 P.3d 709, 715 (2011) (quoting *Garcia v. State Tax Comm'n of Idaho*, 136 Idaho 610, 614, 38 P.3d 1266, 1270 (2002)). It is also well-established that this Court will not hear arguments that a party has failed to preserve for appeal. *State v. Miramontes*, 170 Idaho 920, 924, 517 P.3d 849, 853 (2022). In *State v. Frederick*, 149 Idaho 509, 513, 236 P.3d 1269, 1273 (2010), we held that a defendant failed to preserve his state constitutional arguments on appeal when he "made no mention of the state constitution" in his arguments before the trial court, even though he referenced the Idaho Constitution in his motion to suppress. *See also State v. Wheaton*, 121 Idaho 404, 406–07, 825 P.2d 501, 503–04 (1992) (declining to consider whether the state constitution afforded the defendant greater protection from a warrantless search than the federal constitution because, though he mentioned specific articles from the state constitution in his motion, defendant failed to further clarify his state constitutional argument to the district court).

Although Creech referenced Article I, Section 6 and Article I, Section 13 of the Idaho Constitution in his petition for post-conviction relief, he failed to develop an argument below as to how the state constitution provided greater protection than the federal constitution. At oral argument on the State's motion for summary dismissal, Creech did not argue that the state constitution provides greater protections than the federal constitution. In its written decision, the district court determined that Creech failed to argue how the Idaho Constitution provides greater protection under the Article I, Sections 6 and 13 than the United States Constitution. It only analyzed Creech's Fifth and Eighth Amendment arguments under the federal constitution. Therefore, we agree with the State that Creech failed to preserve his state constitutional arguments. We will not consider those arguments for the first time on appeal.

## V. CONCLUSION

This district court's judgment dismissing Creech's petition is <u>affirmed</u>.

Justices BRODY and MOELLER CONCUR.

BEVAN, C.J., specially concurring.

I join in the result of the majority opinion to affirm the decision of the district court, denying Thomas Creech relief. But I would hold that neither Creech's double jeopardy, nor his cruel and unusual punishment claims are cognizable under the Uniform Post Conviction Procedure Act (UPCPA) or Idaho Code section 19-2719. Neither of Creech's claims cast doubt *on his underlying conviction or death sentence*, but challenge how Creech will be executed in the future. Granting Creech, or some other similarly situated defendant the relief the majority creates would play havoc with the plain reading of the statute and provide a remedy that is not available to post-conviction petitioners in Idaho – at least until today.

Two Idaho statutes govern Creech's right to seek post-conviction relief: First is the UPCPA itself, Idaho Code section 19-4901; the second is Idaho Code section 19-2719, applicable to capital cases like Creech's. But both statutes are limited to challenges directed at either the conviction or the sentence received after the trial, which, in Creech's case, occurred decades ago. "Courts are constrained to follow [the] plain meaning [of a statute], and neither add to the statute nor take away by judicial construction." *Datum Constr., LLC v. RE Inv. Co., LLC*, 173 Idaho 159, 540 P.3d 330, 334 (2023) (brackets in original).

The plain meaning of the statutes before us do not provide the relief which the majority opens the door for today. First, as imparted under section 19-4901(a)(1), a person who claims "[t]hat the *conviction or the sentence* was in violation of the constitution of the United States or the constitution or laws of this state," may have a right to relief. (Emphasis added). Section 19-4901(a)(7) provides limited relief similarly for "the *conviction or sentence*, [which] is otherwise subject to collateral attack upon any ground of alleged error heretofore available under any common law, statutory or other writ, motion, petition, proceeding, or remedy." I.C. §§ 19-4901(a)(1) and (7) (emphasis added). The relief Creech now seeks has nothing to do with the conviction or death sentence that he received in 1982, and which was put into force in 1995, but instead, with what may happen during another attempt by the State to carry out the sentence again.

Idaho Code section 19-2719 is titled "Special appellate and post-conviction procedure for capital cases. . . ." It, too, is limited to relief based on the original conviction or sentence. *See* I.C. §19-2719(4), (5) ("A successive post-conviction pleading asserting the exception *shall be deemed facially insufficient* to the extent it alleges matters that are cumulative or impeaching or would not,

15

even if the allegations were true, cast doubt on the *reliability of the conviction or sentence*." (Emphasis added").

First, it should be noted that any alleged claim that does not "cast doubt on the reliability of the conviction or sentence[,]" is "facially invalid." Today's majority opinion inexplicably violates this tenet of the law at hand. Second, Creech's claims on their face do nothing to challenge the reliability of the conviction or sentence.

Application of both statutes cited above supports the district court's decision: neither of Creech's two claims is cognizable under the UPCPA or Idaho Code section 19-2719, because Creech is not challenging his *underlying sentence* but is challenging the method of the execution of his sentence. I would thus hold that Creech's attempt to raise his constitutional challenges to a second execution attempt through a petition for post-conviction relief is *not* legally cognizable, since no relief for such a claim is provided in the statute.

I understand that the claims Creech is now making could not have been known at the time he was sentenced, but that is not the focal point of the analysis; otherwise, potentially anything that might happen after a conviction and sentence could be raised as an issue in a post-conviction case. This is not the law in Idaho.

The majority's decision is long on empathy for post-conviction petitioners and short on the legal authority to transform our post-conviction statute in such a way. Our Court is not tasked with building avenues, creating new rights, or providing remedies that don't exist in statutes governing post-conviction relief in Idaho. We are tasked with simply reading the law and applying it to the allegations at hand. That leads to what some might view as harsh results sometimes — but that is our task, not stretching to provide new boulevards for presenting claims for which there is no remedy.

The end point of any decision we make in this area must address *what relief* this Court is prepared to grant such a petitioner. Would the Court rule the death sentence issued in this (or another similar case in the future) unconstitutional because the state was unwittingly unable to carry-out the execution appropriately on its first attempt? The avenue created today has nothing to do with Creech's conviction or sentence. Thus, we have no authority to enter such a judgment. The sentence as originally pronounced for Creech has been tested by well over ten appellate decisions. It has been upheld in every such decision since 1995. Thus, there is no logical way to create a remedy where the avenue for relief is not based on a defect with the sentence itself. Secondarily,

16

would the majority see the end point of the new avenue it is fashioning today as a ruling that Creech's original conviction was somehow invalid because of "cruel and unusual punishment" that *might* take place at some future time in this (or another) capital case? Again, we have no authority to enter such an order, nor would there be any grounds to do so.

Our statute is plain: challenges are limited to those focused on the *conviction or sentence*. The "avenue" being created today leads to nowhere; the relief at the end of this ride is not something this Court can create on its own for something that occurred in the manner of execution of the sentence. The Statute's "unusual case" exception applies only to new evidence that bears on *the original criminal proceeding or the original sentence*. Nothing in this exception allows the forward-looking path the majority creates today.

Creech relies on both *Sivak v. State*, 134 Idaho 641, 648 8 P.3d 636, 643 (2000), and *Row v. State*, 145 Idaho 168, 177 P.3d 382 (2008), to support his claims. But neither case provides relief for forward-looking claims like Creech asserts here. Both *Sivak* and *Row* were direct challenges to each defendant's underlying convictions or sentences. In other words, both cases *look back* to prior proceedings, while Creech focuses on what will happen at his next execution – a future proceeding. And whatever happens because of his future execution cannot change the lawfulness of his death sentence that was imposed in 1995.

The district court here recognized that since Creech's death sentence and conviction are valid, his claim asserting cruel and unusual punishment under the post-conviction statute is not litigable:

> [B]ecause Creech's death sentence and underlying conviction are valid, whether a second attempt to execute him by lethal injection would be a cruel and unusual punishment isn't litigable in a post-conviction action. A post-conviction action—whether the criminal case is capital or non-capital—is only a vehicle for attacking the validity of a conviction or sentence. *See* I.C. § 19-2719(5)(b) ("A successive post-conviction pleading . . . shall be deemed facially insufficient to the extent it alleges matters that . . . would not, even if the allegations were true, cast doubt on the reliability of the conviction or sentence."); I.C. § 19-4901(a) (creating the remedy of a post-conviction action to challenge a conviction or sentence); I.C. § 19-4901(b) (stating that the post-conviction remedy "takes the place of all other common law, statutory, or other remedies heretofore available for challenging the validity of the conviction or sentence"). Nothing about the failed execution attempt renders Creech's underlying death sentence unreliable or invalid. Creech's claim that a second attempt to execute him by lethal injection would be a cruel and unusual punishment amounts, under the law, to a mere challenge to a proposed

method of execution; it isn't a potentially viable challenge to his conviction or death sentence. Hence, it isn't litigable in a post-conviction action.

(Emphasis original). I agree. Nothing about the failed execution attempt renders Creech's underlying death sentence unreliable or unsound. I would thus affirm on these grounds without creating an avenue to seek relief under the UPCPA that our legislature hasn't chosen to grant them. As the district court recognized, such petitioners may have other avenues for relief, including before executive branch agencies or in the federal courts, but I do not interpret our post-conviction statutes in a way that enlarges their plain reading to preserve a right for some future, yet unknown, petitioner in Idaho's state courts under our post-conviction structure.

Justice *pro tem* BURDICK, joins in this Special Concurrence.